UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA GILES, | ) Case No. EDCV 08-1088 JC |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER OF REMAND |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## I.   SUMMARY

On August 19, 2008, plaintiff Dora Giles ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 25, 2008 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum and Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In April 2006, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 11, 51-55, 74). Plaintiff asserted that she became disabled on November 1, 2000, due to diverticulitis and left knee damage. (AR 51, 74, 84-85). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on April 14, 2008. (AR 272-87).

On May 12, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 11-17). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: a history of left knee replacement with residual pain, degenerative arthritis of the left knee, and diabetes mellitus (AR 13); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 14); (3) plaintiff could perform a limited range of light work and a significant range of sedentary work (AR 14);[1] (4) plaintiff retained the residual functional capacity to perform her past relevant work as a secretary and a receptionist (AR 16); and (5) plaintiff's allegations regarding her limitations were not totally credible (AR 14-15).

The Appeals Council denied plaintiff's application for review. (AR 4-6).
///

---

[1] Specifically, the ALJ determined that plaintiff: (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk two hours in an eight-hour workday and sit for six hours with normal breaks; (iii) could occasionally climb stairs, ladders, and uneven surfaces; and (iv) could occasionally balance, bend, stoop, kneel, crouch, crawl, and squat. (AR 14).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[2] If so, the claimant is not disabled. If not, proceed to step five.

///

---

[2] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. A Remand Is Appropriate Because the ALJ Failed to Develop the Record Regarding an Ambiguous Treating Physician's Residual Functional Capacity Assessment and Because Resolving Such Ambiguity Could Materially Impact the ALJ's Residual Functional Capacity Assessment

#### 1. Pertinent Law

##### a. Assessment of Treating Physicians' Opinions

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a nontreating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v.

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

When there are conflicting medical assessments by two physicians whose opinions are entitled to equal weight, it is within the ALJ's discretion to resolve the conflict.  See Thomas, 278 F.3d at 956-57.  Even where two treating physicians disagree, however, the ALJ must still articulate specific, legitimate reasons that are supported by substantial evidence in the record for adopting the opinion of one treating physician over another.  See Lester, 81 F.3d at 830-31.

### b.   ALJ's Duty to Develop the Record

An ALJ has an affirmative duty to assist the claimant in developing the record at every step of the sequential evaluation process.  Bustamante, 262 F.3d at

954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop record and to assure that claimant's interests are considered).  The ALJ's duty exists whether or not plaintiff is represented by counsel.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ's duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

"[B]ecause treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."  Social Security Ruling ("SSR") 96-5p.[4]

An ALJ may discharge his duty to develop the record in several ways, including: subpoenaing the plaintiff's physician, submitting questions to the physician, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  Tonapetyan, 242 F.3d at 1150 (citations omitted).

### 2. Pertinent Facts

Clinical notes from the San Bernardino County Medical Center reflect the following:  In October 1997, plaintiff complained of right knee pain as a result of repeatedly kneeling down at work.  (AR 129).  Her pain was mostly along the lateral side of the right knee with swelling and clicking.  (AR 129).  A note was made to rule out nerve impingement and to consider an x-ray on the next visit.

---

[4] Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007).

(AR 129). It was recommended that plaintiff avoid kneeling down on her knee. (AR 129).

Progress notes from the Metropolitan Family Medical Clinic reflect the following: On January 11, 2006, plaintiff complained of left knee pain she had been having for two weeks. (AR 162). The left knee was then swollen and tender. (AR 162). An x-ray of the left knee was ordered. (AR 162). The x-ray of plaintiff's left knee, which was taken on January 12, 2006, was read as normal. (AR 167, 195, 210).

On February 24, 2006, Dr. Lawrence Walker, a consulting physician, examined plaintiff who complained of a painful left knee. (AR 198). Dr. Walker's report reflects the following: Plaintiff stated that she had been having problems with her knee since February 2, 1985, when she fell down some stairs and landed on her knee. (AR 198). Plaintiff reported that the pain was so severe that she had "arthroscopic type surgery" in 1987. (AR 198). According to plaintiff, she had minimal to no improvement after the surgery and had been taking anti-inflammatory medications, but was in "just about" constant pain. (AR 198). Upon examination, plaintiff's left knee was tender to deep palpitation, mostly over the medial joint line. (AR 200). Dr. Walker's diagnosis was to rule out a medial meniscal tear of the left knee. (AR 200). Dr. Walker directed that plaintiff be scheduled for an MRI. (AR 201).

On April 7, 2006, Dr. Walker again saw plaintiff. (AR 196-97). He noted that a March 27, 2006 MRI revealed: a tear of the free edge of the posterior horn of the medial meniscus and a degenerative pathology in the medial compartment of the left knee. (AR 197, 209). Dr. Walker referred plaintiff to orthopedic surgeon, Dr. Peter J. Sofia. (AR 197).

Beginning on April 18, 2006, plaintiff was seen by Dr. Sofia. Dr. Sofia's initial report reflects: Plaintiff did not cooperate with the examination of her left knee. (AR 194). She had extreme medial tenderness. (AR 194). She was not

cooperative with the range of motion. (AR 194). There was no crepitus and no apparent instability. (AR 194). There did not appear to be any specific painful areas other than medially. (AR 194). The diagnoses were left knee arthritis, left knee medial meniscus tear, and unexplained pain response. (AR 195). Dr. Sofia recommended arthroscopic surgery, advised plaintiff that there were no guarantees because of the arthritis, and expressed concern because of plaintiff's "unusual" pain responses. (AR 195).

On June 28, 2006, consulting physician Dr. Jonathan Nordlicht, whose specialty is internal medicine, diagnosed plaintiff with degenerative joint disease in her right knee. (AR 169). On the same date, Dr. Nordlicht completed a physical residual functional capacity assessment form which reflects the following: Plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds. (AR 171). She could stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday and could sit (with normal breaks) for about 6 hours in an 8-hour workday. (AR 171). Her ability to push/pull was unlimited. (AR 171). Plaintiff could occasionally crawl, crouch, kneel, stoop, balance and climb ramps, stairs, ladders, ropes, and scaffolds. (AR 172). Plaintiff had no manipulative, visual, communicative, or environmental limitations. (AR 174).[5]

On October 2, 2006, a treating physician, whose name is illegible, completed a medical opinion form regarding plaintiff's ability to do work-related activities.[6] Such physician opined that based upon a medical finding of "severe bilateral knee arthritis": (1) plaintiff had the maximum ability to lift less than 10 pounds on an occasional or frequent basis; (2) plaintiff had the maximum ability to

---

[5]The ALJ adopted Dr. Nordlicht's residual functional capacity assessment. (AR 14, 16).

[6]As the form calls for a medical opinion, advises the person completing the form to provide information about "your patient," and bears the term "physician's signature" underneath the signature line, this court infers that the form was completed by one of plaintiff's treating physicians.

9

stand, walk, and sit (with normal breaks) for less than 2 hours in an eight-hour day; (3) plaintiff (a) could sit no longer than 20 minutes before changing position; (b) could stand no longer than 5 minutes before changing position; (c) could walk five minutes at a time; and (d) needed the opportunity to shift at will from siting or standing/walking; and (4) plaintiff would sometimes need to lie down at unpredictable intervals during a work shift. (AR 264-65). The physician further indicated that plaintiff could never twist, stoop (bend), crouch, climb stairs, or claim ladders, but cited no supporting medical findings. (AR 265). The physician also opined that plaintiff's ability to reach and push/pull were affected by her knee impairment/inability to have knee support, based upon plaintiff's "knee arthritis – x-ray & surgery." (AR 266). As to environmental restrictions, the physician recommended that plaintiff avoid all exposure to extreme cold, extreme heat, wetness, humidity, and hazards (machinery, heights, etc.) as such conditions would aggravate her severe knee arthritis. (AR 266). Finally, the physician opined that plaintiff's impairment or treatment would cause her to be absent from work more than three times a month. (AR 266).[7]

On October 17, 2006, Dr. Sofia saw plaintiff for a preoperative visit for left total knee replacement surgery to be done on October 20, 2006. (AR 186-88). Dr. Sofia's report reflects: The examination of the left knee revealed that it is similar to the previous medial tenderness (*i.e.*, extreme). (AR 187). The range of motion

---

[7]As discussed below, the ALJ rejected such opinion, stating:

> I have read and considered the statement of disability submitted on October 2, 2006 and give it no weight. (Exhibit 9F, p.4 [AR 266]). The limitations are overly restrictive and not supported by any of the objective medical records. In addition, the signature is not legible and it has not been submitted with any clinical or diagnostic evidence. The sole reason for the limitations is noted to be severe bilateral knee arthritis. This is contradicted by the claimant who testified that she had no right side lower extremity pain at all.

(AR 16).

was slightly decreased at 5 to 110 degrees. (AR 187). There was crepitis and pain on range of motion. (AR 187). There was no redness, swelling, warmth or effusion. (AR 187). There was a marked limp. (AR 187). Plaintiff had trouble with squatting and stepping up. (AR 187).

On October 20, 2006, Dr. Sofia performed a total left knee replacement on plaintiff because of plaintiff's end stage degenerative arthritis in her left knee. (AR 189-92).

On November 6, 2006, Dr. Sofia saw plaintiff for a post-operative visit. (AR 184-85). His report reflects:   The examination of the left knee revealed that the surgical wound was completely healed and benign. (AR 220). There was minimal swelling. (AR 220). There was no redness, warmth or effusion. (AR 220). Plaintiff lacked about 5 degrees of extension. (AR 220). Her flexion was just beyond 90 degrees. (AR 220). There was fairly good strength. (AR 220). She had a moderate limp. (AR 220). There were no unusual problems. (AR 220). As to a treatment plan, Dr. Sofia recommended that plaintiff continue home exercise and physical therapy and requested outpatient physical therapy. (AR 221).

On November 20, 2006, Dr. Sofia again saw plaintiff for a post-operative visit.  (AR 184-85). His report reflects essentially the same examination results as reflected in the November 6, 2006 report. (AR 185).

On November 27, 2006, Dr. Sofia again saw plaintiff. (AR 182-83). The report reflects: There was some swelling in the left knee, but no redness, warmth or effusion. (AR 182). Motion was similar to the last visit at about 5 to 90 degrees with fairly good strength, but a moderate limp. (AR 182). There were no unusual problems, but there had not been much change since the prior visit. (AR 182). As to a treatment plan, Dr. Sofia recommended that plaintiff continue home exercise and physical therapy, renewed her Darvocet prescription, indicated that
///

she may use a cane, and noted that "[t]his may be a prolonged recovery." (AR 183).

On April 14, 2008, plaintiff testified that she had pain in her "knee" or "knees." (AR 275). Although the transcript reflects that a portion of plaintiff's testimony was inaudible, plaintiff appears to have testified that "[t]hey" told her that she had "the same" on her right side, but that she had "nothing else" on the right side. (AR 275-76). She further testified that "Dr. Lasay" (phonetic) told her that she could not work with "[her] leg, [her] knee." (AR 281).

### 3. Analysis

Plaintiff alleges that the ALJ materially erred in rejecting the October 2, 2006 assessment of plaintiff's treating physician. This Court agrees.

As indicated in note 7, *supra*, the ALJ rejected the entirety of the October 2, 2006 assessment based on the following articulated reasons: (1) the limitations contained therein were overly restrictive and not supported by any of the objective medical records; (2) the signature was illegible; (3) the report was not "submitted with any clinical or diagnostic evidence"; and (4) the sole reason for the limitations was noted to be "severe bilateral knee arthritis," which was inconsistent with plaintiff's testimony that she had no right side lower extremity pain at all. (AR 16).

First, the fact that the treating physician's signature was illegible is not a legitimate basis upon which to reject the opinion. Rather, the fact that the ALJ could not decipher the signature creates an ambiguity about which the ALJ should have inquired. It is inexplicable that the ALJ did not make such a simple inquiry. If, for example, the form bears Dr. Sofia's signature, this could well have materially impacted the ALJ's analysis as the ALJ elsewhere specifically credited at least some of Dr. Sofia's post-operative opinions. (AR 15-16).[8]

---

[8]The Court notes, however, that the ALJ ignored Dr. Sofia's opinion that plaintiff's recovery might be "prolonged" and Dr. Sofia's statement regarding plaintiff's use of a cane.

12

1        Second, the fact that the report was not "submitted with any clinical or
2   diagnostic evidence" is not a legitimate basis upon which to reject the treating
3   physician's opinion.  Although defendant correctly notes that medical reports
4   should include clinical findings and diagnoses (20 C.F.R. §§ 404.1513(b),
5   416.913(b)), defendant points to no requirement that clinical and diagnostic
6   *evidence* must be submitted with a residual functional capacity assessment,
7   particularly if the record already contains such evidence.  Here, the treating
8   physician's opinion refers to clinical findings and diagnoses, albeit in an
9   abbreviated fashion (*i.e.*, knee arthritis, x-ray, surgery).  The medical record
10  contains an MRI of plaintiff's left knee that shows a degenerative pathology (AR
11  197, 209), a diagnosis of left knee arthritis from Dr. Sofia (AR 195), and, as of
12  April 18, 2006, a recommendation by Dr. Sofia that plaintiff have arthroscopic
13  surgery on her left knee.  (AR 195).
14       Third, the ALJ's broad and general assertion that the objective evidence did
15  not support the limitations set forth in the treating physician's opinion, is not
16  entirely consistent with the record.  For example, the treating physician opined that
17  plaintiff could never crouch or climb.  (AR 265).  This is not inconsistent with the
18  report generated by Dr. Sofia approximately two weeks later which reflects that
19  plaintiff had trouble with squatting and stepping up.  (AR 187).
20       Fourth, although the treating physician's reference to "severe bilateral
21  arthritis" would otherwise be a legitimate basis upon which to reject the treating
22  physician's opinion in light of the lack of evidence regarding arthritis in plaintiff's
23  right knee, this Court is troubled by the ALJ's rejection of the opinion on such
24  basis in light of the fact that Dr. Nordlicht, whose residual functional capacity
25  assessment the ALJ completely adopted, appears to have made a similar error.  As
26  noted above, on June 28, 2006, Dr. Nordlicht diagnosed plaintiff with
27  degenerative joint disease in her *right* knee.  (AR 169).
28  ///

In sum, in light of (1) the ALJ's failure to develop the record regarding the identity of the physician who generated the residual functional capacity assessment in issue; (2) the fact that the identity of such physician could materially impact the assessment of the weigh to be given to such opinion; and (3) the defects in the ALJ's analysis of such physician's opinion, a remand is appropriate to enable the ALJ to develop the record in the foregoing regard and to reassess, in light of the foregoing, the weight, if any, to be afforded such opinion.[9]

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[10]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   September 17, 2009

                                                    /s/
                                    Honorable Jacqueline Chooljian
                                    UNITED STATES MAGISTRATE JUDGE

---

[9] To the extent the records of the doctor referenced as "Dr. Lasay" (phonetic) in the transcript of the hearing (AR 281) are not already in the record, the ALJ should also obtain such records.

[10] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).